UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Yarii Ameer Massey, Jr. (R72867), ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> Marcus Hardy, *et al.*, ) <br> ) <br> Defendants. ) | Case No. 1:21-CV-00560 <br><br> Honorable Edmond E. Chang |

**MEMORANDUM OPINION AND ORDER**

In this *pro se* civil-rights lawsuit, 42 U.S.C. § 1983, Plaintiff Yarii Ameer Massey, Jr., a state prisoner, alleges that he was housed under unconstitutional conditions at Stateville Correctional Center. The State has moved for summary judgment, arguing that Massey failed to exhaust administrative remedies under the Prison Litigation Reform Act, 42 U.S.C. § 1997(e). For the reasons discussed in this Opinion, the motion is denied.

**I. Summary Judgment Standard**

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378

(2007). The Court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

## II. Local Rule 56.1

Local Rule 56.1 governs how to present and to dispute facts in litigating motions for summary judgment in this District. The rule is intended "to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (citation omitted). Local Rule 56.1(a) requires the moving party to provide a statement of material facts that complies with Local Rule 56.1(d). LR 56.1(a). Local Rule 56.1(d) requires that "[e]ach asserted fact must be supported by citation to the specific evidentiary material, including the specific page number, that supports it. The court may disregard any asserted fact that is not supported with such a citation." LR 56.1(d)(2).

The opposing party must then respond to the movant's proposed statements of fact. *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005); LR 56.1(e). In the case of any disagreement, "a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact. Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." LR 56.1(e)(3). "[M]ere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material." *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003). The party opposing summary judgment may also submit "a statement of additional material facts that complies with LR 56.1(d)." L.R 56.1(b)(3). "All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." *Id*. A plaintiff's *pro se* status does not excuse him from complying with Local Rule 56.1. *See Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006).

The Defendants filed a Rule 56.1 statement of material facts with their motion for summary judgment. R. 122. Consistent with the local rules, the Defendants also provided Massey with a *pro se* Local Rule 56.2 Notice, which explains what Local Rule 56.1 requires of a litigant opposing summary judgment. R. 124-1. Massey responded to the Defendants' statement of material facts. R. 137. Massey's response also includes a "separate statement of additional facts." R. 137 at 10–13. But the "additional facts" are actually just a repeat of his statements when disputing certain of the Defendants' statements of material fact. The facts are not actually "additional" facts.

What comes next, then, in the factual background is derived only from the Defendants' statements of fact and Massey's response to those statements, at least insofar as his response is properly supported with specific evidentiary material.

### III. Factual Background

On December 14, 2016, Massey was transferred to Stateville Correctional Center. R. 122, ¶ 2. Massey contends that he submitted three grievances on three separate dates, September 20, 2019; December 24, 2019; and March 10, 2020, all related to unconstitutional conditions of confinement. *Id.* ¶ 5.

On September 20, 2019, Massey submitted an emergency grievance directly to the Chief Administrative Officer about conditions of his confinement. *Id.* ¶¶ 7, 9. The emergency grievance does not include the names or descriptions of any individuals, including any of the Defendants. *Id.* ¶ 8. On September 30, 2019, the Chief determined that the grievance was not truly an emergency and that Massey should submit the grievance "in the normal manner." *Id.* ¶ 10. That same day, Massry submitted the September 20, 2019 grievance directly to the Illinois Administrative Review Board. *Id.* ¶ 13. Around five weeks later, on October 29, 2019, the Review Board returned Massey's grievance to him because it did not include a counselor's response and it did not include a grievance officer's response or the Chief Administrative Officer's response. *Id.* ¶ 14.

On December 24, 2019, Massey submitted a second grievance about the conditions of confinement. *Id.* ¶ 15. The grievance again does not specify the names (or physical or job-title descriptions) of any of the Defendants. *Id.* ¶ 16. On February 18,

4

2020, Massey submitted the December 24, 2019 grievance to the Review Board without first receiving a response from the grievance counselor, grievance officer, or the Chief Administrative Officer. *Id.* ¶ 17. On March 5, 2020, the Review Board again returned the December 24, 2019 grievance, again similarly saying, "Grievance is dated 12/24/2019. There are no facility responses. Therefore, making this past time frame." *Id.* ¶ 19.

Massey received a response to the December 24, 2019 grievance from his counsel on July 27, 2020. Pl.'s Resp. ¶ 17; R. 137 at 14. Next, many months later, Massey received a response to the December 24, 2019 grievance from the grievance officer on March 20, 2021. Pl.'s Resp. ¶ 17; R. 137 at 16. The grievance form says that the grievance officer received the grievance on August 20, 2020. *Id.* Around three weeks later, Massey received a response to the December 24, 2019 grievance from the Chief Administrative Officer on April 7. 2021. (*Id.*) In the December 24, 2019 grievance, Massey said that he resubmitted his September 20, 2019 grievance as directed by the Review Board but he had not received a response. Pl.'s Resp. ¶ 11; R. 137 at 15.

On March 10, 2020, Massey submitted a third grievance on the conditions of his confinement. *Id.* ¶ 20. The March 10, 2020 grievance once again did not specify the names of any Defendants. *Id.* ¶ 21. But this third grievance at least did mention job titles, saying that Massey has told "C/O's" (presumably correctional officers) about the poor living conditions dating back to late November 2019, and that the "Lt's. and Sgt's work orders" have been ignored. Pl.'s Resp. ¶ 21; R. 137 at 17. On April 30, 2020, the grievance counselor responded to the grievance. *Id.* ¶ 23. On July 2, 2020, the

5

grievance counselor denied the grievance. *Id*. ¶ 24. On July 10, 2020, the Chief Administrative Officer denied the grievance. *Id*. ¶ 25. On July 11, 2020, Massey submitted the grievance to the Administrative Review Board. *Id*. ¶ 26. On December 30, 2020, the Review Board returned the grievance because it was "[n]ot submitted in the timeframe outlined in Department Rule 504 therefore, this issue will not be addressed further." *Id*. ¶ 27. The Review Board went on to say, "no date cited in the written gr[ievance] within 60-day timeframe for review." *Id*.

## IV. Analysis

### A. PLRA Exhaustion

The Prison Litigation Reform Act (often referred to as the PLRA) prohibits prisoners and detainees from filing suit in federal court to challenge prison or jail conditions "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). When contested, exhaustion is a threshold issue. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). The contention that a prisoner has failed to exhaust administrative remedies is an affirmative defense, so like almost all affirmative defense, the defense has the burden of proving it. *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020).

To exhaust administrative remedies, a prisoner must take all the steps required by the prison's grievance system. *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004). In other words, the PLRA "requires proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). Inmates must meet appropriate deadlines and follow "other critical procedural rules because no adjudicative system can function effectively without

6

imposing some orderly structure on the course of its proceedings." *Id*. at 90–91. The only limitation to the exhaustion requirement is baked into the statute: remedies must be "available." *Ross v. Blake*, 578 U.S. 632, 639 (2016).

Broadly speaking, there are at least three categories of circumstances when a prison's administrative remedy can be considered unavailable under the PLRA. *Ross*, 578 U.S. at 643. First, if an administrative procedure "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"—then it is not available to inmates. *Id*. at 643. Second, if administrative rules are so opaque or confusing that "no reasonable prisoner can use them," then they are not considered available. *Id*. at 644 (cleaned up). For vagueness to render a remedy unavailable, however, genuine murkiness is required; if administrative rules simply have multiple reasonable interpretations, then "Congress has determined that the inmate should err on the side of exhaustion." *Id*. Third, if prison administrators or staff "thwart inmates from taking advantage of a grievance process[,]" then the process is not available. *Id*. This can happen through "affirmative misconduct," such as refusing to provide or respond to grievance forms or threatening inmates with negative consequences for grieving. *Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016); *see also Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004) (grievance process not available when correctional staff refused to provide grievance forms to plaintiff); *Kaba v. Stepp*, 458 F.3d 678, 684–86 (7th Cir. 2006) (grievance process not available to inmate who alleged that prison officials would not provide him with grievance forms unless he "pre-disclosed the topic of the grievance" and it was not about the prison officials).

7

Administrators can also relegate a remedy into the depths of unavailability by simply failing to inform inmates of grievance processes, leaving inmates ignorant of the remedy. *Hernandez*, 814 F.3d at 842.

### B. Rules of the Illinois Department of Corrections

The rules governing administrative remedies for Illinois prisoners are set out in 20 Illinois Administrative Code § 504.800, *et seq*. Under these provisions, a prisoner must submit a grievance to his institutional counselor "within 60 days after the discovery of the incident, occurrence, or problem that gives rise to the grievance." 20 Ill. Admin. Code § 504.810(a). The written grievance must "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." 20 Ill. Admin. Code § 504.810(c). If the prisoner does not know the names of individuals who allegedly harmed him, then he may still file a grievance, but he "must include as much descriptive information about the individual as possible." *Id*. If the institutional counselor does not informally resolve a grievance, the Grievance Officer reviews the grievance, provides a written response to the prisoner, 20 Ill. Admin. Code § 504.830(a), and sends written findings and recommendations to the Chief Administrative Officer, 20 Ill. Admin. Code § 504.830(e). The Chief Administrative Officer then sends a written decision to the prisoner "within two months after receiving the written grievance, when reasonably feasible under the circumstances." 20 Ill. Admin. Code § 504.830(e). If the prisoner is still dissatisfied, he may appeal in writing to the Director or his or her designees on the Administrative Review

Board within 30 days after the date of the decision. 20 Ill. Admin. Code § 504.850(a). The Review Board "shall submit to the Director a written report of its findings and recommendations." 20 Ill. Admin. Code § 504.850(d). The final step is for the Director of the Illinois Department of Corrections to review the Board's findings and recommendations and make a final determination "within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances." 20 Ill. Admin. Code § 504.850(e).

An inmate also may request that a grievance be handled as an emergency by sending it directly to the warden. 20 Ill. Admin. Code § 504.840. The grievance is handled as an emergency if the warden determines that "there is a substantial risk of imminent personal injury or other serious or irreparable harm to the [inmate]." If the warden determines that the grievance does not need to be handled as an emergency, then the inmate is notified in writing that he "may resubmit the grievance as non-emergent, in accordance with the standard grievance process." *Id*.

### C. The Grievances

Massey argues that the administrative process was not available to him because correctional staff failed to respond to grievances or failed to timely respond to his grievances.

### 1. September 20, 2019 Grievance

Remember that the September 20, 2019 grievance was returned to him after it was deemed not to be an emergency. Massey seems to concede (as he must) that sending that denied emergency grievance directly to the Review Board was not in

9

compliance with the grievance procedure. Massey argues, however, that he also did resubmit the grievance through the proper process but he failed to receive any response to that resubmitted grievance. Although Massey did not provide a copy of that resubmitted grievance, his subsequent grievance does include a statement that he resubmitted the earlier grievance and had not yet received a response. The correctional staff's failure to respond to the *resubmitted* grievance would have rendered the grievance process unavailable. *See Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002) (holding that administrative remedies become "unavailable" when prison officials fail to respond to inmate grievances). At the summary judgment stage, the Court does not weigh the credibility of admissible evidence. *Omnicare, Inc.*, 629 F.3d at 704. This is especially true of the averment of a party to the existence of a fact on which he would have personal knowledge. So Massey has established a genuine dispute of material fact on whether he resubmitted the rejected emergency grievance and that staff then failed to respond to the grievance. Having said that, as explained next, the other two grievances defeat the exhaustion defense on their own, so there is no apparent need for a hearing on whether Massey really resubmitted the September 2019 grievance.

### 2. December 24, 2019 Grievance

Massey also argues that the grievance process was rendered unavailable due to the delay in receiving the responses throughout the grievance process. Massey submitted a grievance on December 24, 2019, but did not receive a response from his counselor until July 27, 2020—over eight months later. Massey continued the

grievance procedure by sending the grievance to the grievance officer, who received it on August 20, 2020. But then Massey did not receive a response from the grievance officer for over seven months. That is *15* months of waiting time. Massey filed this lawsuit on February 1, 2021, after waiting more than 15 months for his grievance to go through just two steps of the grievance process with no resolution. The unexplained delay was unreasonable and rendered the grievance process unavailable. *See Reid v. Balota*, 962 F.3d 325, 330-331 (7th Cir. 2020) (rejecting argument that prisoner needed to allow more time for response because prisoner had no reason to believe that anyone was looking into his grievances); *Banks v. Patton*, 743 F. App'x 690, 695 (7th Cir. 2018) (non-precedential disposition) (explaining that a remedy can be deemed unavailable when jail officials do not respond to the grievance); *Lewis*, 300 F.3d at 833 ("[W]e refuse to interpret the PLRA so narrowly as to … permit [prison officials] to exploit the exhaustion requirement through indefinite delay in responding to grievances.") (internal citation omitted).

### 3. March 10, 2020 Grievance

The March 10, 2020 grievance went through the grievance process in nine months. The Review Board ultimately denied the grievance because it had not been submitted within the 60-day timeframe (that is, within 60 days after the underlying incident) required by the Administrative Code. The grievance says that Massey has been living in poor conditions since "late Nov. 2019" and that he has submitted multiple grievances about the issue with no results. At this point, Massey had already submitted two grievances challenging his living conditions with no result. Submitting

11

the third grievance after the 60-day timeframe was brought about not by his lack of diligence, but the lack of action by correctional staff. In essence, prison administrators and staff thwarted Massey's ability to file this third grievance with the 60-day timeframe rendering the grievance process unavailable. *Ross,* 578 U.S. at 644.

### D. Identification of Defendants by Name

Lastly, the Defendants argue that Massey failed to exhaust his administrative remedies because he failed to name the Defendants in any of the grievances. Under IDOC procedure, a written grievance must "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." 20 Ill. Admin. Code § 504.810(c). If the prisoner does not know the names of individuals who allegedly harmed him, then he may still file a grievance, but he "must include as much descriptive information about the individual as possible." *Id.*

Having said that, the PLRA does not categorically require an inmate to name prospective defendants in his grievance—even if the prospective defendants were known to him when the grievance was written. *See, e.g., Donald v. Varga*, No. 17-cv-50368, 2019 WL 2525856, at *5 (N.D. Ill. June 19, 2019). This is especially true where the state-prison procedures themselves authorize—as they do here—the filing of grievances that contain enough information to put the prison on notice of the problem and to describe (as best as the prisoner can) the officials at issue. The purpose of Administrative Code § 504.810(c) is to put prison officials on notice of an issue at the prison. *Kyles v. Beaugard*, No. 15-cv-8895, 2017 WL 4122708, at *8 (N.D. Ill. Sept.

18, 2017). Put another way, Massey need not have named each Defendant by name in the grievance so long as the grievance sufficiently "raise[d] the issue which is the subject of the lawsuit." *Id.*

Here, Massey's grievances do contain sufficient detail on the multiple issues with the conditions of confinement. Also, in the March 10, 2020 grievance, Massey described by job title (correctional officers, sergeants, and lieutenants) the officials who were are aware of the problems. When read in context, the grievances supplied enough information to put Stateville officials on notice of the allegedly poor living conditions. This basis for summary judgment is rejected.

### V. Conclusion

In light of the record evidence, the Court denies the Defendants' motion for summary judgment [121]. As explained in the Opinion, it appears that the December 2019 and March 2020 grievances definitively defeat the exhaustion defense—even if the evidence is viewed in the *Defendants'* favor and even if the Defendants were given the benefit of reasonable inferences. It is true that Massey did not formally cross-move for summary judgment against the exhaustion defense. But it appears that the Defendants mustered all of the evidence and arguments they had on the defense, and even if the summary judgment standard were applied in their favor, no factfinder could find in the defense's favor. And the December 2019 and March 2020 grievances sufficiently exhaust the conditions alleged in the September 2019 grievance, and would cover the damages and limitations period asserted in the September 2019 grievance. All of this is to say that summary judgment against the exhaustion defense

is entered and the case is ready to move on. If the Defendants believe that there is a way to resist summary judgment in light of this Opinion, then they may file a motion to reconsider and present the argument without the burden of the usual reconsideration standard. The motion to reconsider, if any, is due on April 20, 2023.

It appears that some merits-related discovery remains to be completed in light of the stay that was entered back on October 24, 2022. *See* R. 127. Discovery should resume as needed and discovery supervision remains referred to the magistrate judge. The Court also notes that the magistrate judge is probably better positioned to evaluate whether the remaining discovery is too difficult for Massey to complete on his own, notwithstanding the Court's previous denials for attorney representation. If another motion for attorney representation is filed, then the Court probably will refer it to the magistrate judge for consideration (or of course the magistrate judge may *sua sponte* recruit counsel).

ENTERED:

       s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: April 6, 2023